# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 20-1595V

| | |
|---|---|
| JOANNE DAVIES,<br><br>              Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>              Respondent. | Chief Special Master Corcoran<br><br>Filed: June 5, 2025 |

*Michael G. McLaren, Black McLaren et al., PC., Memphis, TN, for Petitioner.*

*Mitchell Jones, U.S. Department of Justice, Washington, DC, for Respondent.*

### RULING ON ENTITLEMENT[1]

On November 16, 2020, Joanne Davies filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that a seasonal influenza ("flu") vaccine she received on November 16, 2020, caused her to suffer the Table injury of "Shoulder Injury Related to Vaccine Administration" ("SIRVA"). Petition at 1, ECF No. 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this unpublished Fact Ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons discussed below, I find the onset of Petitioner's SIRVA more likely than not occurred within 48 hours of vaccination, and that she is entitled to compensation for her injury.

### I. Relevant Procedural History

On March 7, 2022, Respondent filed his initial Rule 4(c) Report opposing entitlement. I subsequently ordered Petitioner to file any additional evidence in support of her claim she could identify. Petitioner filed a sworn declaration from her husband regarding onset, and how the injury had affected her quality of living. ECF No. 26. Petitioner filed a Motion for Ruling on the Record Regarding Onset, informing the Court that the medical evidence and witness testimony provided are sufficient to establish onset of the Table SIRVA. ECF No. 29.

Respondent filed his second Rule 4(c) Report on October 13, 2023, almost three years after the claim's initiation. ECF No. 31. Respondent specifically maintained that the evidence preponderated against a finding that the onset of Petitioner's shoulder pain occurred within 48 hours of her vaccination, as required by the Vaccine Injury Table. *Id.* at 6-8 (citing 42 C.F.R. § 100.3(c)(10)(ii) (required onset for pain listed in the QAI)). Respondent further argued that Petitioner had not provided evidence sufficient to establish causation-in-fact under the relevant standard. *Id.* at 7-12.

### II. Evidence

#### A. *Medical Records*

I make these findings after a complete review of the record to include all medical records, affidavits or declarations, Respondent's Rule 4 report, and additional evidence filed. Specifically, I note the following facts from the medical record:

- Petitioner received a flu vaccine on November 22, 2019, at a Walgreens located in New York, NY. Ex. 2 at 3.

- On March 3, 2020 – more than three months post-vaccination - Petitioner presented to an urgent care facility, Manhattan Primary Care, for left shoulder pain. Ex.4. Petitioner informed Ekaterine Bachilava, P.A., that she had previously told her primary care physician about the pain, but that this treater had "not done anything about it". *Id.* at 2. Petitioner stated she had the shoulder pain for five months (which would predate vaccination if true), and was told to use ice and was prescribed Naproxen and Baclofen for pain. *Id.*

- On June 23, 2020, Petitioner had an MRI of her left shoulder. Ex. 5 at 4. The MRI showed Petitioner had adhesive capsulitis, mild supraspinatus tendinosis, and minimal subacromial sub-deltoid bursitis. *Id.*

- On July 13, 2020, Petitioner has a telehealth appointment with Lisa Ben-Aderent, FNP-C, at MCP, for her left shoulder pain. Ex. 4 at 6. Petitioner informed NP Aderent that she has had shoulder pain since "flu vaccine in February". *Id.* Petitioner requested to have a referral for physical therapy and a surgical evaluation. NP Aderent noted Petitioner had an incomplete left rotator cuff tear. *Id.*

- On July 15, 2020, Petitioner returned to her Primary Care Physician, Ashley Marcus, M.D., (PCP) for continuing left shoulder pain. Ex. 7 at 1. Petitioner's complaints included aches, soreness, and numbness. *Id.* Pain was worse when reaching and lifting. *Id.* Dr. Marcus noted Petitioner was positive for Neer's, Hawkin's, and O'Brien's Tests and recommended Petitioner receive PT and receive a steroid injection. *Id.* at 2.

- On July 24, 2020, Petitioner had a second appointment with her PCP to receive the steroid injection for shoulder pain. Ex. 7 at 4. Petitioner informed her PCP she was still looking for a provider for physical therapy. *Id.* at 5.

- On August 3, 2020, Petitioner was seen for physical therapy at Park Physical Therapy. Ex. 14 at 2.

- On August 7, 2020, Petitioner had a telehealth appointment with her PCP for continuing left shoulder pain. Ex. 7 at 7. Petitioner informed Dr. Marcus that the steroid injection was helpful with her pain, and a second injection was to be scheduled within two to three weeks. *Id.* at 8.

- On September 9, 2020, Petitioner received a second steroid injection in her left shoulder. Ex. 7 at 10. Petitioner had a PT appointment that same day and was reported to have improvement in her range of motion, with further improvement at the appointment on September 16, 2020. Ex. 14 at 5 – 7.

- Petitioner returned to her PCP on September 23, 2020, reporting improvement in her left shoulder pain. Ex. 4 at 9. However, Dr. Marcus

noted that Petitioner was having decreased motion in her shoulder at this appointment.

- On October 7, 2020, Petitioner returned to PT for a second "evaluation". Ex. 14 at 8. It was noted that Petitioner's left arm was "moving better" but she "still had pain" in the shoulder. *Id.*

- On October 14, 2020, Petitioner reported an increase in pain at her PT appointment. She also had complaints of pain making physical activity difficult for her. *Id.*

- On January 7, 2021, Petitioner posted a "Facebook Update" stating that a shoulder surgery has "gone well" and was to be released that same day. Ex. 17 at 3.[3]

B.   *Affidavits*

Petitioner has submitted three affidavits in support of her claim. The first is from Petitioner and was executed on November 8, 2020. Ex. 1. Petitioner describes that prior to her vaccination on November 22, 2019, she had no left shoulder pain, and that following the flu vaccination she experienced left shoulder pain within 24-48 hours. *Id.* ¶¶ 4-5. She then notes that when she first sought treatment for her shoulder pain, she was unaware of what may have caused it but denied significant trauma. *Id.* ¶ 6. She then goes on to describe the course of her treatment, including starting with conservative treatment which ramped up to receiving steroid injections and PT. *Id.* ¶¶ 6-16. Petitioner notes that the records from these treatments place the onset of her shoulder pain in November 2019 following her flu vaccination.

The second affidavit is also from Petitioner, and was executed on March 25, 2022. Ex. 16. Petitioner explains, in reference to a notation that her shoulder pain "5 months ago" she was quickly recalling that she had her vaccination in November of 2019 and she made the statement in March of 2020. *Id.* ¶ 5. She also states that she believes a notation referring to a vaccination in February 2020 is a mistake. *Id.* Finally, she explains that many of the gaps in her treatment record are a reflection of the COVID Pandemic, and that she thought seeing in-person medical evaluations for shoulder pain was inadvisable given the state of the world. *Id.* ¶ 6. Finally, Petitioner describes how her shoulder pain

---

[3] Petitioner did not file medical records in regard to support any claim for shoulder surgery. The social media post is the only claim of surgery.

has impacted her life, such as an inability to be as active as she previously was and how she has not been able to knit, which was a previous hobby, and that her self-employment has suffered due to an inability to promote her business due to sleeplessness and lethargy she has experienced because of her shoulder pain. *Id.* ¶¶ 10-11.

The final affidavit is from Mr. Erick Holmes, Petitioner's husband, and was executed on January 25, 2023. Ex. 18. Mr. Holmes states that Petitioner complained of pain and numbness in her left arm the evening she received the vaccination, and that the following morning she did not go to a yoga class because of the pain. *Id.* ¶¶ 5-6. He goes on to describe the impact of her shoulder pain, which included an inability to carry groceries back to their apartment, requiring help to put on clothing, inability to carry a suitcase while traveling, and how she had to sleep in a separate bed due to her shoulder pain keeping her up at night. *Id.* ¶¶ 8, 9, 12, 16. He also indicates that Petitioner had trouble finding a physician that would take her health insurance to address her shoulder pain, and that delays in treatment were due to the COVID pandemic. *Id.* ¶ 18-20.

### III.     Applicable Law

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*. The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

**IV.   Analysis**

A.   *Legal Standard for Proof of Vaccination*

Under the Vaccine Act, providing proof of vaccination is a threshold matter in order to prevail under either a "Table" injury in which causation is presumed, or an "off-Table" injury, in which petitioner identifies a causal link between the vaccine and the alleged injury. § 300aa–11(c)(1)(A) and (B). Petitioner must first prove by a preponderance of the evidence that he "received a vaccine set forth in the Vaccine Injury Table." § 300aa-

11(c)(1)(A). A special master shall assess "the record as a whole" and may not "find that a petitioner received a vaccine 'based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion.' " *Rich v. Sec'y of Health & Human Servs.*, No. 12–742V, 2013 WL 4476751 (Fed. Cl. Spec. Mstr. July 26, 2013) (§ 300aa–13(a)(1)).

Although contemporaneous documentation of vaccination from a healthcare provider is the best evidence to prove administration of a vaccine, it is not absolutely required in all cases. *Centmehaiey v. Sec'y of Health & Human Servs.*, 32 Fed. Cl. 612, 621 (1995) ("[t]he lack of contemporaneous documentary proof of a vaccination ... does not necessarily bar recovery"). Indeed, as Vaccine Rule 2 states, "[i]f the required medical records are not submitted, the petitioner must include an affidavit detailing the efforts made to obtain such records and the reasons for their unavailability." Vaccine Rule 2(c)(2)(B)(i). Furthermore, if a petitioner's claim is "based in any part on the observations or testimony of any person, the petitioner should include the substance of each person's proposed testimony in a detailed affidavit(s) supporting all elements of the allegations made in the petition." Vaccine Rule 2(c)(2)(B)(ii).

Special masters have thus found that vaccine administration occurred even in the absence of direct documentation. In such cases, preponderant evidence was provided in the form of other medical records and/or witness testimony. For example, corroborative, though backward-looking, medical notations have been found to tip the evidentiary scale in favor of vaccine receipt. *Lamberti v. Sec'y of Health & Human Servs.*, No. 99–507V, 2007 WL 1772058, at *7 (Fed. Cl. Spec. Mstr. May 31, 2007) (finding multiple medical record references to vaccine receipt constituted adequate evidence of administration); *Groht v. Sec'y of Health & Human Servs.*, No. 00–287V, 2006 WL 3342222, at *2 (Fed. Cl. Spec. Mstr. Oct. 30, 2006) (finding a treating physician's note—"4/30/97—Hep B. inj. # 1 (not given here) (pt. wanted this to be charted)"—to be sufficient proof of vaccination); *Figueroa v. Sec'y of Health & Human Servs.*, No. 10-705V, 2014 WL 6819494, at *4 (Fed. Cl. Spec. Mstr. Nov. 7, 2014) (finding sufficient proof of vaccination where subsequent medical records documented that petitioner consistently reported receiving the subject flu vaccination); *Beckner v. Sec'y of Health & Human Servs.*, No. 11-668V, 2013 WL 3353993, at *8 (Fed. Cl. Spec. Mstr. Apr. 25, 2013) (finding sufficient proof of vaccination where a medical record created approximately a month after petitioner's alleged receipt of the subject vaccine documented petitioner's report of his vaccination and the statement was made "for the purpose of facilitating diagnosis and treatment of his condition...[and] the vaccination was received in such close temporal proximity to petitioner's admission that misremembering is unlikely"). *But see Matthews v. Sec'y of Health & Hum. Servs.*, No. 19-414V, 2021 WL 4190265 (Fed. Cl. Spec. Mstr. Aug. 19, 2021), *aff'd*, 157 Fed. Cl. 777 (2021) (finding insufficient proof of vaccination where petitioner's numerous contemporaneous medical records, petition, and subsequent filings were inconsistent in

reporting whether he received a flu vaccine that season and identifying the time at which he allegedly received the vaccine).

In addition to corroborative medical records, witness testimony can also help establish a sufficient basis for a finding that a vaccine was administered as alleged. *Alger v. Sec'y of Health & Human Servs.*, No. 89–31V, 1990 WL 293408, at *2, 7 (Fed. Cl. Spec. Mstr. Mar. 14, 1990) (oral testimony from a parent and the doctor who administered the vaccine was "more than adequate to support a finding that the vaccine was administered"). The Court of Federal Claims has recognized the existence of precedent supporting the proposition that a court may base a finding of vaccination on lay testimony. *Epstein v. Sec'y of Health & Human Servs.*, 35 Fed. Cl. 467, 478 (Fed. Cl. 1996); *see also Brown v. Sec'y of Health & Human Servs.*, 18 Cl. Ct. 834, 839–40 (1989) (proof of vaccination in the absence of contemporaneous medical records established via testimony of petitioner's parent, her personal calendar, and evidence of a charge for the vaccine on the physician's billing statement), *rev'd on other grounds*, 920 F.2d 918 (Fed.Cir.1990); *Gambo v. Sec'y of Health & Human Servs.*, No. 13-691V, 2014 WL 7739572, at *3 (Fed. Cl. Dec. 18, 2014).

### B. Fact Findings – Onset and Entitlement

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[4] a petitioner must establish that he suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A

---

[4] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* § 11(c)(1)(A)(B)(D)(E).

vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation, or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381 at 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health &*

*Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184 at 204 (2013) (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

1. **Factual Findings Regarding a Table SIRVA**

After a review of the entire record, I find that a preponderance of the evidence demonstrates that Petitioner has satisfied the Qualifications and Aids to Interpretation ("QAI") requirements for a Table SIRVA.

**A. Petitioner has no Prior Left Shoulder Condition or Injury**

The first requirement for a Table SIRVA is a lack of problems associated with the affected shoulder prior to vaccination that would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i). In this case, the medical records do not indicate that Petitioner suffered any prior left shoulder pain issues and Respondent does not contend that Petitioner has failed to carry her burden with respect to this requirement. Accordingly, the record allows me to find that Petitioner had no prior right shoulder condition or injury.

**B. Pain Occurs with the Specified Timeframe (Onset)**

A SIRVA claimant must show that she experienced the first symptom or onset within 48 hours of vaccination (42 C.F.R. § 100.3(a)(XIV)(B)), and that her pain occurred within that same 48-hour period (42 C.F.R. § 100.3(c)(10)(ii) (QAI criteria)).

Respondent's sole objection to Petitioner's claim is that she has not established by preponderant evidence that her shoulder pain began within 48-hours of receiving the flu vaccine. Resp. at 7. Respondent specifically notes that some of Petitioner's medical records, such as a March 16, 2020, visit for an x-ray during which Petitioner reported her left shoulder pain began five months earlier, which Respondent interprets to reflect an onset date some time in mid-October 2019, before the November vaccination. *Id.* at 7-8. Respondent also notes the seven-month gap between the vaccination and her first treatment visit in July 2020 and asks the Court to give little weight to Petitioner's assertions that this gap can be explained by the ongoing COVID Pandemic. *Id.* at 9-10.

Although these objections merit some weight, preponderant evidence still (if *barely*) supports a Table-consistent onset finding. Petitioner's recorded statement that her shoulder pain began five months ago during a March 2020 medical visit has been fairly explained by Petitioner to reflect an approximation of duration, and was provided at a time when she did not understand the vaccination to be potentially causal. Reply at 3. The record also clearly reflects that Petitioner received a vaccination in November 2019, and not before or after.

Petitioner's concerns about the COVID Pandemic also provide an understandable reason why someone might be concerned about seeking treatment for an injury that she had been able to live with for some time. Nor was Petitioner's treatment delay particularly excessive. Petitioner first sought treatment approximately four months after vaccination on March 3, 2020, when she was provided with conservative measures to alleviate her symptoms such as rest, ice, and over-the-counter pain medication. Once those methods proved ineffective, she had an MRI on her left shoulder on June 23, 2020, and a telehealth appointment on July 13, 2020. Ex. 4 at 6. From then on, Petitioner was diligent in pursing treatment for her symptoms. Although the delay in seeking treatment does speak to the lack of severity of Petitioner's injury (which will bear on damages), it does not prevent a favorable onset determination.

Therefore, I find that Petitioner has carried her burden in proving that her symptoms began within 48-hours of vaccination and thus has proven the second QAI criteria.

### C. Petitioner's Pain and Limited Range of Motion was Limited to her Left Shoulder

The specific language of a SIRVA injury contained in the QAI of the Vaccine Injury Table is that "pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered." 42 C.F.R. § 100.3(c)(10)(iii) (QAI criteria)). It does not appear that Respondent is contesting this criterion and there is nothing in the submitted record to indicate that Petitioner's symptoms were not limited to her left

shoulder. Petitioner has consistently complained of left shoulder pain and loss of ROM, and all medical treatment she received, including steroid injections and PT, was focused on her left shoulder. I therefore find Petitioner has satisfied the third QAI requirement.

### D. There is No Evidence of Another Condition or Abnormality

The last criterion for a Table SIRVA states that there must be no other condition or abnormality which would explain Petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Once again, there is no evidence in the record to suggest that another condition or abnormality could be the cause of Petitioner's left shoulder injury and Respondent does not offer any argument to the contrary. Accordingly, Petitioner has satisfied the fourth QAI requirement.

### 2. Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). The overall record contains preponderant evidence to fulfill these additional requirements.

I have already determined that the record preponderates a finding that Petitioner received the flu vaccine on November 22, 2019. There is no evidence that Petitioner has collected a civil award for her injury. Petition at 4; Section 11(c)(1)(E) (lack of prior civil award).

As stated above, I have found that the onset of Petitioner's left shoulder pain occurred within 48 hours of vaccination. *See* 42 C.F.R. § 100.3(c)(10)(ii) (setting forth this requirement). This finding also satisfies the requirement that Petitioner's first symptom or manifestation of onset occur within the time frame listed on the Vaccine Injury Table. 42 C.F.R. § 100.3(a)(XIV)(B) (listing a time frame of 48 hours for a Table SIRVA following receipt of the influenza vaccine). I have also found that Petitioner's pain and reduced range of motion was limited to her left shoulder. 42 C.F.R. § 100.3(c)(10). Finally, I find that there was no condition or abnormality that would explain Petitioner's symptoms after vaccination. *Id.* Therefore, Petitioner has satisfied all requirements for a Table SIRVA.

The last criteria which must be satisfied by Petitioner involves the duration of her SIRVA. For compensation to be awarded, the Vaccine Act requires that a petitioner suffer the residual effects of his or her right shoulder injury for more than six months or required surgical intervention. *See* Section 11(c)(1)(D)(i) (statutory six-month requirement). Starting from November 25, 2019 (48 hours after vaccination), the records undoubtedly demonstrate that Petitioner suffered the residual effects of her shoulder injury for more than six months. *See, e.g.*, Ex. 4 at 9 (record from September 23, 2020, when Petitioner presented to her physician for follow-up care, noted that she still had left shoulder pain

that was improving along with decreased ROM and strength). Thus, this requirement is also met.

Based upon all of the above, Petitioner has established that she suffered a Table SIRVA. Additionally, she has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

## Conclusion

**In view of the evidence of record, I find Petitioner is entitled to compensation. The issuance of a damages order will follow the filing of this Decision.**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master